**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terence William McDonough, et al., | No. CV-24-00764-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Michael J Bidwill, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion to remand. (Doc. 26.) For the following reasons, the motion is denied. However, the Court will require certain parties to provide additional information regarding their citizenship.

**RELEVANT BACKGROUND**

On April 3, 2024, Plaintiffs filed a complaint in Maricopa County Superior Court. (Doc. 1-3.) The complaint names six defendants: (1) Michael J. Bidwill ("Bidwill"); (2) Arizona Cardinals Football Club, LLC, dba Arizona Cardinals ("Arizona Cardinals"); (3) Counterpoint Strategies, LTD ("Counterpoint"); (4) James McCarthy ("McCarthy"); (5) Donald Peder Johnsen ("Johnsen"); and (6) Gallagher & Kennedy, P.A. ("G&K"). (*Id.* ¶¶ 4-9.)[1]

On April 4, 2024, Johnsen and G&K (together, "the Removing Defendants") filed a notice of removal. (Doc. 1.) The notice alleges that the Removing Defendants had not

---

[1] Although G&K is identified simply as "Gallagher and Kennedy" in the caption and body of the complaint (Doc. 1-3 at 1, 2 ¶ 9), G&K has since clarified that its true name is "Gallagher & Kennedy, P.A." (Doc. 1 at 1; Doc. 17 at 2.)

been served with the summons or complaint at the time of removal. (*Id.* ¶ 2.) The notice further alleges that the Removing Defendants' counsel "confirmed, based on all reasonably available information, that none of the remaining defendants have been served." (*Id.* ¶ 4.) In a related vein, the notice alleges that the Removing Defendants did not seek the consent of the other defendants because such consent is only required when a non-removing defendant has "been properly joined and served." (*Id.* ¶ 15.) The notice goes on to allege that removal is appropriate on the basis of diversity jurisdiction. (*Id.* ¶¶ 6-12.)

On May 2, 2024, Plaintiffs filed a motion to remand. (Doc. 26.)

On May 16, 2024, all defendants opposed the motion to remand. (Doc. 32.)[2]

On May 23, 2024, Plaintiffs filed a reply. (Doc. 33.)

**DISCUSSION**

I. Plaintiffs' Motion To Remand

    A. **The Parties' Arguments**

Plaintiffs identify two reasons why the removal effort here should be deemed deficient. (Doc. 26.) First, Plaintiffs argue that the Removing Defendants improperly "relied on a practice commonly known as 'Snap Removal,'" under which a "forum defendant 'races to the courthouse' to file their notice of removal prior to being served with the complaint" in order to sidestep 28 U.S.C. § 1441(b)(2), which provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." (*Id.* at 2.) Plaintiffs acknowledge that "[t]he Ninth Circuit Court of Appeals has yet to weigh in on the validity of snap removal" but contend this practice "has been repeatedly rejected by Arizona Federal District Courts," citing cases suggesting that snap removal is "an exploitative practice that circumvents the purpose of the forum defendant rule" which "some courts have disallowed," *Astra Veda Corp. v. Disruptive Res. LLC*, 2022 WL 3716495, *2 (D. Ariz. 2022), that snap removal

---

[2] Defendants' request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(h).

should not be permitted where "plaintiffs did not have a meaningful opportunity to effectuate service before defendants filed their notice of removal," *Traslavina v. MDS Pharma Servs. Inc.*, 2011 WL 2132880, *1 (D. Ariz. 2011), and that "[i]t is inconceivable that Congress, in adding the 'properly joined and served' language [to § 1441(b)(2)], intended to create an arbitrary means for a forum defendant to avoid the forum defendant rule simply by filing a notice of removal before the plaintiff is able to effect process," *Rogers v. Gosney*, 2016 WL 4771376, *3 (D. Ariz. 2016). (*Id.* at 2-4.) Second, Plaintiffs contend the removal effort was deficient because "[o]nly two Defendants of the six Defendants in this matter have sought removal," which violates the "Rule of Unanimity" set forth in 28 U.S.C. § 1446(b)(2)(A). (*Id.* at 2-3.)

Defendants respond that snap removal is permissible pursuant to the "clear and unambiguous" language of the removal statute. (Doc. 32 at 4.) Defendants note that "this Court recently observed" in *Amato v. Holladay Bank & Tr.*, 2020 WL 4814254, *2 (D. Ariz. 2020), that "four federal appellate courts, as well as courts within the Ninth Circuit, have concluded that Section 1441(b)(2) is inapplicable" where the notice of removal was filed before any forum defendant was served. (*Id.* at 3-4.) Defendants also note that these courts considered whether to apply the absurdity canon of construction to § 1441(b)(2) and concluded the canon is inapplicable. (*Id.* at 4-6.) As for the unanimity requirement, Defendants contend that § 1446(b)(2)(A) only requires the consent of the non-removing defendants who were "properly joined and served" at the time of the removal, but here none of the other defendants had been served at the time of removal. (*Id.* at 6-7.)

In reply, Plaintiffs argue that *Amato* did not resolve whether snap removal is permissible and that Defendants' cited cases regarding the unanimity requirement are distinguishable because the defendants in those cases were "never served," whereas the defendants here were served following removal. (Doc. 33.)

B. **Analysis**

Under 28 U.S.C. § 1441(b)(2), "[a] civil action otherwise removable solely on the basis of the [diversity jurisdiction] may not be removed if any of the parties in interest

properly joined and served as defendants is a citizen of the State in which such action is brought." According to Plaintiffs, § 1441(b)(2) is implicated here because several Defendants are citizens of Arizona and those forum defendants "'race[d] to the courthouse to file their notice of removal prior to being served with the complaint." (Doc. 26 at 2.)

The Court acknowledges that the circuits are split on the propriety of snap removal, as are district courts within the Ninth Circuit. *See, e.g.*, *Bank of Am., N.A. v. Fid. Nat'l Title Grp., Inc.*, 2022 WL 2819847, *2-3 (D. Nev. 2022) (contrasting Second, Third, and Fifth Circuit cases permitting snap removal with an Eleventh Circuit case); *id.* at *4-5 (collecting decisions within the Ninth Circuit). Nevertheless, in this Court's view, the plain and unambiguous language of § 1441(b)(2) prohibits removal only when a defendant who has been "properly joined and served" is a citizen of the forum state. Here, it is undisputed that no Defendant had been served at the time of removal. It follows that § 1441(b)(2) has no application. Although some courts have declined to follow this approach based on the view that allowing snap removal would be inconsistent with Congress's purpose and intent in enacting § 1441(b)(2),[3] the Court chooses instead to follow the principle that "once [Congress] enacts a statute we do not inquire what the legislature meant; we ask only what the statute means." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) (cleaned up). *See also In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) ("The absurdity canon isn't a license for us to disregard statutory text where it conflicts with our policy preferences; instead, it is confined to situations where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone. . . . Congress made a policy judgment in selecting the words of section 326(a), and we are in no position to contradict it.") (cleaned up); *Caminetti v. United States*, 242 U.S. 470, 485 (1918) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if

---

[3] *See, e.g., Bank of Am.,* 2022 WL 2819847 at *4 (concluding that "the plain meaning of the removal statute is at odds with the purpose of the statute"); *Black v. Monster Beverage Corp.*, 2016 WL 81474, *3 (C.D. Cal. 2016) (choosing to "focus on the purpose and not the literal language of § 1441(b)(2)").

the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.").

For these reasons, the Court joins[4] the list of courts that have concluded that § 1441(b)(2) does not preclude removal in this scenario. *See, e.g., Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("A non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state."); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, . . . Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("[T]he language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship, . . . the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."). In doing so, the Court acknowledges that the Ninth Circuit has not definitively ruled on this issue and that many courts have come out the other way in thoughtful decisions. *See, e.g.*, *Astra Veda*, 2022 WL 3716495 at *2 (noting that "the issue of snap removals is not clear-cut" and that the "Ninth Circuit has not specifically addressed snap removals") (citation omitted); *Rogers*, 2016 WL 4771376 at *3 ("Other district courts in the Ninth Circuit have found that the 'properly joined and served' language does not permit removal in all cases where an in-state defendant has not yet been served, but only those where the in-state defendant was fraudulently joined. This view is persuasive . . . .") (citations omitted); *Traslavina*, 2011 WL 2132880 at *1 ("The 'properly joined and served' language of 28 U.S.C. § 1441(b) is

---

[4] As Plaintiffs correctly note, this Court's earlier decision in *Amato* merely raised the issue of the propriety of snap removal, without resolving it.

widely interpreted, not as an effort to expand removal jurisdiction, but as reflecting a Congressional intent to prevent the fraudulent joinder of forum defendants in order to avoid removal.").

Finally, and for similar reasons, the Court rejects Plaintiffs' contention that the removal effort here violated § 1446(b)(2)(A), which provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  Here, the Removing Defendants were not required to obtain the consent of the remaining defendants because they had not yet been served.[5]

II.     Diversity Jurisdiction

As noted, the Removing Defendants removed this action on the basis of diversity jurisdiction.  In the motion-to-remand briefing, all parties seem to assume that the requirements for diversity jurisdiction have been established—their dispute is confined to the propriety of snap removal and to § 1446's unanimity requirement.  Despite this seeming agreement, the Court is unpersuaded that the existence of diversity jurisdiction has been adequately established on the current record.

The Court has an independent obligation to determine whether it has subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

The party seeking to invoke diversity jurisdiction has the burden of proof, *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986), by a preponderance of the evidence. *McNatt v. Allied-Signal, Inc.*, 972 F.2d 1340 (9th Cir. 1992); *see* 13B Federal Practice § 3611 at 521 & n. 34.  There is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

---

[5] Furthermore, all Defendants have joined in the opposition to Plaintiffs' motion to remand, which suggests that none opposed the Removing Defendants' removal effort.

"Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Diversity jurisdiction exists when there is complete diversity of citizenship between the plaintiffs and the defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332. A controversy meets this requirement when "all the persons on one side of it are citizens of different states from all the persons on the other side." *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

In the removal notice, the Removing Defendants did not allege the *citizenship* of any of the individual parties—instead, all three Plaintiffs were alleged to be "residents" of North Carolina, while Bidwill and Johnsen were alleged to be "residents" of Arizona and McCarthy was alleged to be a "resident" of New York. (Doc. 1. ¶¶ 6-8, 10.) The problem with this approach is that "[i]t has long been settled that residence and citizenship [are] wholly different things within the meaning of the Constitution and the laws defining and regulating the jurisdiction of the . . . courts of the United States; and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purpose of jurisdiction." *Steigleder v. McQuesten,* 198 U.S. 141, 143 (1905). "To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her *permanent* home, where she resides with the intention to remain or to which she intends to return." *Kanter*, 265 F.3d at 858-59 (emphasis added) (citations omitted).

The removal notice also fails to establish the citizenship of any of the entity defendants. As for G&K, although the removal notice alleges that its "principal place of business" is in Arizona (*id.* ¶ 7), the rule in the Ninth Circuit is that an unincorporated business association—and as noted in footnote one, G&K has described itself as a "P.A.," or professional association— "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir.

2006). Thus, to properly establish diversity jurisdiction, "the citizenship of all of the members must be pled." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 611 (9th Cir. 2016).

For the same reason, the removal notice's allegation that Arizona Cardinals "is an Arizona Delaware limited liability company registered to do business, and doing business, in Arizona" (Doc. 1 ¶ 9) is insufficient to establish that entity's citizenship. Putting aside the fact that the removal notice's reference to an "Arizona Delaware" LLC appears to be a typo, the removal notice should have listed all of this LLC's owners/members and then affirmatively alleged the citizenship of each, using the proper legal standard for each. *NewGen*, 840 F.3d at 611; *Johnson*, 437 F.3d at 899.

Finally, as for Counterpoint, the removal notice simply quotes an allegation in the complaint that Counterpoint is "a business form unknown, with its principal place of business in the State of New York." (Doc. 1 ¶ 10). But "a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties," *Kanter*, 265 F.3d at 857, which means the Removing Defendants should have affirmatively pleaded Counterpoint's business form, as that form dictates what information must be set forth to establish Counterpoint's citizenship. At any rate, regardless of how Counterpoint is organized, an allegation regarding its principal place of business is, alone, insufficient to establish its citizenship.

To cure these pleading deficiencies, the Court will require the Removing Defendants to file an amended notice of removal that affirmatively alleges each party's citizenship under the correct legal standard. *Star Ins. Co. v. West*, 2010 WL 3715155, *2 (D. Ariz. 2010); *see also NewGen*, 840 F.3d at 612 ("Courts may permit parties to amend defective allegations of jurisdiction at any stage in the proceedings."). The Removing Defendants are advised that failure to timely comply with this order shall result in the remand of this action without further notice for lack of subject-matter jurisdiction.

The Court also notes that on May 2, 2024, Arizona Cardinals filed a corporate disclosure statement that provides detailed information regarding the citizenship of all of

its members (and their members) and establishes that it is a citizen of both Delaware and Arizona. (Doc. 28.) Unfortunately, the other entity defendants' corporate disclosure statements are less helpful. Although G&K asserts in its corporate disclosure statement that Arizona is its "principal place of business," its "state of incorporation," and the place of "residence of all directors" (Doc. 17 at 2), the assertions regarding a "principal place of business" and "state of incorporation" are likely irrelevant because G&K does not appear to be a corporation, but rather a professional association. As for the assertion that Arizona is the "residence of all directors," it is not clear that all "directors" encompasses all "members," and furthermore, to establish the citizenship of each individual G&K member, the place of domicile, not the place of residence, must be alleged. *Kanter*, 265 F.3d at 858-59; *Steigleder,* 198 U.S. at 143. Meanwhile, although Counterpoint's corporate disclosure statement asserts in conclusory fashion that Counterpoint is a citizen of Virginia and New York (Doc. 31 at 2), the statement does not explain *why* or provide any factual avowals in support of those conclusions.

To ensure that the requirements of subject-matter jurisdiction are met, the Court will require each Defendant, apart from Arizona Cardinals, to file a notice that affirmatively alleges its form of organization (in the case of entity defendants) and its citizenship under the correct legal standards. Additionally, the Court will require each Plaintiff to file a notice informing the Court of his or her citizenship.

…
…
…
…
…
…
…
…
…

Accordingly,

**IT IS ORDERED** that:

1. Plaintiffs' motion to remand (Doc. 26) is **denied**.

2. Each Plaintiff shall file, by **June 7, 2024**, a notice informing the Court of his or her citizenship.

3. Each Defendant, apart from Arizona Cardinals, shall file, by **June 7, 2024**, a notice that affirmatively sets forth its form of organization (in the case of entity defendants) and jurisdictional facts establishing its citizenship under the correct legal standards.

4. The Removing Defendants shall file an amended notice of removal properly stating a jurisdictional basis for this action no later than **June 14, 2024**.

5. If the Removing Defendants fail to file an amended notice of removal by **June 14, 2024**, the Clerk of Court shall remand this action to state court without further notice.

Dated this 30th day of May, 2024.

Dominic W. Lanza
United States District Judge