**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Terence William McDonough, et al., | ) ) ) | |
| | ) | No.  2:24-cv-00764-DWL |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Phoenix, Arizona |
| | ) | April 28, 2025 |
| Michael J. Bidwill, et al., | ) ) | 11:03 a.m. |
| Defendants. | ) ) | |

**BEFORE:   THE HONORABLE DOMINIC W. LANZA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**ORDER TO SHOW CAUSE HEARING**

Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

    Michael Caspino, Esq.
    In Propria Persona
    Price Caspino
    30442 Esperanza
    Rancho Santa Margarita, CA 92688

For Defendants Bidwill and Arizona Cardinals:

    Osborn Maledon PA
    By:  David B. Rosenbaum, Esq.
    2929 N. Central Ave., Suite 2000
    Phoenix, AZ 85012

For Defendants Gallagher & Kennedy and Donald Peder Johnsen:

    Coppersmith Brockelman PLC
    By:  Malvika Sinha, Esq.
    2800 N. Central Ave., Suite 1900
    Phoenix, AZ 85004

**P R O C E E D I N G S**

(Proceedings commenced at 11:03 a.m.)

THE COURTROOM DEPUTY: We're on the record in Criminal [sic] Case No. CV-24-764, Terence William McDonough, et al., versus Michael J. Bidwill, et al., set before the Court for a show cause hearing.

Counsel, please announce your appearances beginning with Mr. Caspino.

MR. CASPINO: Good morning, Your Honor. Mike Caspino appearing as ordered by the Court.

MR. ROSENBAUM: Good morning, Your Honor. David Rosenbaum representing the Arizona Cardinals and Michael Bidwill.

MS. SINHA: Good morning, Your Honor. Malvika Sinha representing G&K and Don Johnsen.

THE COURT: All right. Welcome, everyone. This is the time set for the order to show cause in this case.

So, Mr. Caspino, I'm sure you have reviewed the order that I issued on March 26th, 2025. And I guess I'll just start by, if there's anything you'd like to address, I'll give you an opportunity to do so.

MR. CASPINO: I would, Your Honor. Would you like me to come to the podium or stay here?

THE COURT: Whatever you're most comfortable with.

MR. CASPINO: Okay. Thank you, Your Honor.

1          First, I apologize to the Court for all of the
2  confusion surrounding this.  I am truly sorry, but I'd like to
3  explain what happened here.
4          Approximately 25 years ago I took the Arizona Bar.  I
5  passed.  Resident of California.  Seven or eight years ago I
6  decided I didn't need it anymore and decided to give up my
7  membership.  I didn't pay my fees, I didn't put in my MCLE, and
8  I assumed I was going to be taken off the role of attorneys.
9          I was not taken off the role of attorneys, and the
10 first indication that I was suspended was when I filed the pro
11 hac vice in this case.  I was never given a notice of
12 suspension by the Bar that I recall seven or eight years ago.
13         I came to this court never representing myself as an
14 Arizona attorney, indicating that I was pro hac vice,
15 submitting an application, and even coming with local counsel
16 that I retained to assist.  So I never made any form of a
17 representation in that regard.
18         Now, once we found out about this situation, we -- my
19 staff, I will tell you, spoke with the Bar.  It is a very
20 difficult process to get reinstated.  I requested that the Bar
21 simply allow me to resign from the Bar so that I would no
22 longer be an Arizona attorney, wouldn't be subject to
23 suspension, and could come to this court as a pro hac vice
24 attorney.
25         In order to be reinstated, you have to make up all of

1   the CLE from the past seven or eight years because some doesn't
2   translate over.  You have to have proof of -- from the State
3   Bar of California, not just of good standing but also proof of
4   never being disciplined, which I had to get, and they told me
5   it can take up to three to four months.
6          My intention, as I told the Bar, was to get reinstated
7   and resign immediately, then to come to this court or any other
8   court if I ever come back to Arizona to practice pro hac vice.
9          So I was informed this morning on the way here via
10  email that they have approved my application to be reinstated.
11  They told me that by the end of the day, they would send me a
12  bill for how much money I have to pay, and I plan on being
13  reinstated immediately once I pay it and then resigning, so
14  then I can put in my pro hac vice -- my pro hac vice
15  application.
16         Now, there are two things that I know that the Court
17  takes umbrage with, the first one being that -- the word
18  "pending," "pro hac vice pending."  We've consistently used
19  that for the time period where the lawsuit is filed and the pro
20  hac vice motion has not been filed.
21         When a pro hac vice motion is filed, you of course
22  need a case number.  You of course need your documents from the
23  State Bar, and then you put all that together.  We've always
24  used "pending."  We use "filed" when it is actually filed, the
25  motion for pro hac vice is filed.

1          So if there's any confusion regarding that, I'm sorry,
2   but I did go back and look at my opposing counsel, who was pro
3   hac'd in.  They used the word "forthcoming."  From now on I'll
4   use the word "forthcoming" rather than "pending," but this was
5   no attempt at all whatsoever to hoodwink the Court or to
6   hoodwink anybody whatsoever.
7          The bottom line here, Your Honor, is that if we look
8   at -- you asked me to look at and to respond to, in the order,
9   the four factors in this case that came from -- I apologize,
10  but my iPad, the highlighting didn't come on.  But there are
11  four factors from the case in there, one including whether or
12  not any damage was done.
13         I can tell you right now there was no damage done.  I
14  had a Bar-licensed attorney from Arizona the entire time on the
15  case.  Nothing happened here that was a potential for damage
16  because I had that -- I had a partner in my office, when it was
17  brought to my attention, immediately pro hac into this case.
18         And since the Court brought this to my attention about
19  this, I have completely pulled off the case immediately.  No
20  filings, no even work on the case whatsoever.  The recent
21  motion practice that was done, I did not participate in that at
22  all.  I've completely respected the Court's orders across the
23  board.
24         So I'm sorry for all the confusion here.  I was stuck
25  in kind of a limbo with the State Bar trying to get reinstated

1  and then trying to make sure that I was in a place where I
2  could then resign immediately and move forward with the pro
3  hac.  I never came to this court as a member of the Bar in this
4  District of Arizona, always came to this court as a pro hac
5  vice attorney.
6         I've been practicing 30 years.  Never been
7  disciplined.  I take these rules very, very seriously, Your
8  Honor, and I do apologize for this.
9         THE COURT:  Okay.  Thank you for that.
10        All right.  So one of the points you just made, so
11 your position was when you used the phrase "pro hac vice
12 pending," that was meant to signify not that there was in fact
13 a pending application but just your intent that in the future
14 you were going to file one?
15        MR. CASPINO:  Merriam-Webster's Dictionary, I looked
16 it up last night, means impending or imminent is what the
17 second definition that they have for the word "pending."  We've
18 always used the word "pending," meaning that we're gathering up
19 the paperwork, et cetera, the time between the filing of the
20 lawsuit and the filing of the pro hac vice application.
21        So we've always used that, and then we switch to
22 "filed" after that.
23        THE COURT:  All right. What do I do with the -- the
24 timeline, as I understand it, I've been forwarded the email
25 exchange that your staff had with our attorney admissions folks

|   |   |
|---|---|
| 1 | on June 6th, when they were just informed point blank you can't |
| 2 | apply because you're suspended both in the District of |
| 3 | Arizona -- excuse me, both in Arizona and your District of |
| 4 | Arizona suspension, which was previously in place, has been |
| 5 | suspended. |
| 6 | How do you justify continuing to represent yourself as |
| 7 | pro hac pending after you've been told by the court that you |
| 8 | can't file a pro hac application? |
| 9 | MR. CASPINO:  Well, again, pro hac pending is not |
| 10 | filed.  We haven't filed it.  That's what we're saying.  We |
| 11 | haven't filed it but it's imminent.  That's what we're saying |
| 12 | by saying pro hac pending. |
| 13 | THE COURT:  How is it imminent if you were just told |
| 14 | you're not allowed to file one? |
| 15 | MR. CASPINO:  Well, if I may, Your Honor, during that |
| 16 | period, for quite some time, we were waiting on an answer from |
| 17 | the Bar as to whether or not I could immediately go ahead and |
| 18 | resign.  And that took a long time for them to get back to me |
| 19 | to say no.  They said they've never had that request before. |
| 20 | So it took a long time and a lot of back and forth with the |
| 21 | Bar.  The Bar -- |
| 22 | THE COURT:  Remind me again, what was the event that |
| 23 | prompted you to reach out to the Bar, and when did that occur? |
| 24 | MR. CASPINO:  It would have been when we were told |
| 25 | that I was suspended, and that would have been that June time |

1  period, I believe, June or July, right in there.  I was gone
2  for most of June and July.
3            THE COURT:  Okay.
4            MR. CASPINO:  So then there's three -- I've got to
5  make up all of -- I waited probably 60 days to hear back from
6  the Bar to say yes or no, can you go ahead and just immediately
7  resign, right.  And then I was told we couldn't.  And then I
8  had to make up all of the CLE on everything.  I had to get
9  my -- not just a certificate of good standing but also a record
10 of discipline from the State Bar.
11           These things just took time, Your Honor.  I got it all
12 in, and of all coincidences, this morning was the time when
13 they told me I've been approved.
14           THE COURT:  All right.  So the filings that occurred
15 in May, before this exchange on June 6th, you believed that you
16 would have no problem filing a pro hac application at that
17 time, and so you represented yourself as pro hac pending with
18 the anticipation that you would soon be filing one.
19           MR. CASPINO:  Absolutely.
20           THE COURT:  And then on June 6th, that's when you
21 realized there was a problem?
22           MR. CASPINO:  Yes.
23           THE COURT:  And it was your belief that it was okay in
24 the period after June 6th to keep using the representation "pro
25 hac pending" because you believed this would shortly get

```
 1   resolved and then you would be filing pro hac after that?
 2              MR. CASPINO:  Yes, Your Honor.
 3              THE COURT:  Okay.
 4              MR. CASPINO:  I believe that we were in the process of
 5   getting all the paperwork necessary to submit to the Court,
 6   which would be my resignation from the State Bar.  That's what
 7   I was looking for over the summertime.  Didn't get an answer on
 8   that.  Then was finally told that I have to go back and pay all
 9   the extra fees and everything seven, eight years back in order
10   to resign.
11              THE COURT:  Another -- I'm happy to finally be getting
12   this additional explanation today.  Part of me wishes it hadn't
13   come to forcing you to fly out here and do all this.  Why
14   didn't you just respond in writing when I gave you a chance to
15   respond in writing earlier?
16              MR. CASPINO:  I jumped back from the case and thought
17   any day now I'm going to get my okay to file and do it, and
18   then I'd just put that in together and it would all be done.
19   You gave me the opportunity to do so.  I didn't take it.  In
20   hindsight, I should have taken it.  I didn't think it was going
21   to take this long.  But it ended up taking this long, and for
22   that I apologize to the Court.
23              THE COURT:  Okay.  It might be kind of outside what
24   I'm supposed to focus on in this case, but what do I do with
25   the fact that even -- throughout this period and even as of
```

1  today, your firm's website continues to represent you as
2  licensed in the State of Arizona when you've been suspended
3  this whole time?
4          MR. CASPINO:  Your Honor, that's a very old entry that
5  was taken over from a previous website.  I apologize for that,
6  and I realize that, and it's either in the process of getting
7  taken down or it is taken down, I'm not sure yet.  But I saw
8  that --
9          THE COURT:  I don't want to beat you up on anything.
10 I mean, if I think back when I was practicing, if I got an
11 order to show cause from a judge and one of the things they
12 pointed out was, hey, your website is continuing to
13 misrepresent you as licensed and I had a hearing coming up,
14 it's surprising to me that you hadn't fixed it even before the
15 hearing.
16         MR. CASPINO:  Your Honor, I'm not a technical guy, and
17 I did ask our office manager to take care of that.  I didn't
18 follow up to see if it was.  I apologize, but I can assure you,
19 I'm not trying to hoodwink anybody at all.
20         THE COURT:  All right.  One final question is, there
21 were a number of times during this period before you had even
22 filed an application, then when you found out that you weren't
23 able to, that you weren't just identified on the letterhead,
24 but you were the actual person who was signing some of the
25 filings in this case.  And at least in one instance, I believe

1   it's the filing at Docket No. 65, which was a potentially quite
2   important filing in this case.  It was the opposition to the
3   motion to dismiss.
4         So this was filed two months after you found out that
5   you not only are not admitted but you can't even apply pro hac.
6   You're the only person who signs this.  How is it okay for you
7   to be practicing law in this district when you have knowledge
8   of all these things?
9         MR. CASPINO:  Your Honor, it may have been my
10  signature on there, but I didn't write most of that, I can
11  assure you.  I apologize if I did do that.  I don't have it in
12  front of me, but I don't -- I don't recall the circumstances
13  surrounding that.  I just don't.
14        And I had thought any day now -- I'd been thinking any
15  day now we're going to get word from the Bar that I can just go
16  ahead and resign.  I think it's a little bit crazy that I have
17  to pay back fees for seven, eight years or whatever it is and
18  get CLE and everything just for the benefit of resigning, but I
19  had held out hope that I'd be in this position that any day now
20  I'd be able to go ahead and resign from the Bar and then just
21  be pro hac viced in.
22        THE COURT:  But that -- I mean, it wouldn't have some
23  sort of time machine effect that would have made it permissible
24  for you, seven months earlier, when you weren't licensed or
25  authorized in this district, to be signing pleadings and

1  practicing.
2           MR. CASPINO: Yeah, I apologize, Your Honor, for that.
3  I do.
4           THE COURT: Is that your -- is that a usual practice
5  for you to sign things without your knowledge that other people
6  have written?
7           MR. CASPINO: No. No, not at all. I never do. I
8  read everything that I sign. Absolutely.
9           THE COURT: So did you read this opposition brief that
10 you signed?
11          MR. CASPINO: Read it several times.
12          THE COURT: All right. Anything else?
13          MR. CASPINO: Nothing else, Your Honor.
14          THE COURT: All right. Thank you.
15          All right. Even though this was set up as an order to
16 show cause hearing and I primarily wanted to hear from
17 Mr. Caspino, I do see that defense counsel is here. Is there
18 anything you'd like to add or be heard on?
19          MR. ROSENBAUM: Your Honor, I'm a little reluctant.
20 This is a matter between the Court and Mr. Caspino, but having
21 heard Mr. Caspino's statements, just a couple of things just to
22 make sure the record is clear.
23          And so we were aware of the Arizona suspension and
24 were relying on the "pro hac pending" statements in the
25 filings. Because there's no transparency, right? Opposing

counsel doesn't see the pro hac application, doesn't see communications.

And so throughout the period we were dealing with Mr. Caspino, during the meet-and-confers, prior to filing the motions, with no indication that there was some issue with the pro hac.

So I -- when the motion to dismiss was set for argument in February, I emailed Mr. Caspino so as not to, you know, surprise him at the hearing to ask, what's the status of your pro hac? We see that you're still listing pending on your filings. And he said, oh, it was a mistake. Don't ever forget to file your fees, or something like that.

Then of course the hearing was canceled, so we never brought that to the Court's attention.

But I think it's fair to say that up until that email exchange, we were dealing with Mr. Caspino as lead counsel for the plaintiffs in the case, with no visibility into what was happening at the district court. The state court website, of course, still said he was suspended, and we knew that. And what did that mean in terms of his admission to this court, we really -- we had no idea.

Mr. Caspino said that since the Court's order, he's taken a back seat. He's had no role in this case. This is outside the record. I don't know if the Court wants to -- more information on that, but there's a state court case that was

1   filed in February with Mr. Caspino -- against the Cardinals and
2   Mr. Bidwill on behalf of other -- another plaintiff.
3   　　　　　Mr. Caspino listed -- signed the complaint, said "pro
4   hac pending," and just a week ago, on April 18, he sent an
5   email to the Cardinals counsel -- we're not in that case --
6   saying:  Attached is an amended complaint which we intend to
7   file that adds two new plaintiffs.
8   　　　　　So again, in that matter, he's still purporting to
9   have pro hac.  I think in the amended complaint he did say "pro
10  hac forthcoming."
11  　　　　　But that's the information that I have in terms of our
12  dealings.  We did take a look at some other jurisdictions and
13  saw that on April 12th, in the Common Pleas Court in
14  Pennsylvania, he signed a pro hac declaration attesting that
15  he'd never been suspended from the practice of law.  That's an
16  issue between Mr. Caspino presumably and the court in
17  Pennsylvania.
18  　　　　　And there was a pro hac admission in the Southern
19  District of New York, January 23, '25.  Presumably there's a
20  similar representation required for those pro hac applications
21  that you've never been suspended.  That application's since
22  been granted, but again, we're in the dark.  Maybe there was a
23  disclosure:  Yes, in fact, I was suspended but it was for
24  nonpayment of fees.  We have no visibility into that.
25  　　　　　So that's the information I have, Your Honor.  I just

```
1    wanted to make sure the record was clear in terms of what we
2    have, and if Your Honor needs any of this in writing, be happy
3    to provide it.
4              THE COURT:  All right.  Thank you.
5              MS. SINHA:  I have nothing to add, Your Honor.  Thank
6    you.
7              THE COURT:  All right.  Thank you.
8              All right.  What I'm going to do is I'm going to
9    give -- I'm going to take this under advisement and give
10   thought to everything that was stated here in court today.
11             The -- the final question I have for you, Mr. Caspino,
12   is I still haven't -- don't take this question as a preview
13   that I'm going to proceed with a sanction, but one of the
14   questions posed in the order to show cause is if the Court were
15   to proceed with a sanction, whether you wished to avail
16   yourself of some of the procedural rights that can apply in
17   this circumstance.
18             And so my question is, if I were to consider, for
19   example, a modest monetary sanction in this case, would you
20   wish to have further proceedings with further procedural rights
21   attached to it, or are you willing to submit on the current
22   record?
23             MR. CASPINO:  Yeah, that's kind of an interesting
24   aspect.  I saw that in there, if it's "serious," I think was
25   the word.
```

1          THE COURT: Right.
2          MR. CASPINO: I would not consider a modest monetary
3  sanction to be serious, especially in the light of I got to pay
4  5- to $10,000 to get reinstated here, so I wouldn't see that as
5  serious. Anything beyond that, though, Your Honor, I would see
6  as serious.
7          THE COURT: Thank you.
8          All right. Thanks again to counsel for being here.
9  Nice to see everyone. I'll be taking this under advisement,
10 and I hope to get out an order in the coming days or weeks.
11         MR. CASPINO: Thank you, Your Honor.
12         THE COURT: Thank you.
13         (Proceedings concluded at 11:24 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

## C E R T I F I C A T E

I, JENNIFER A. PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 2nd day of May, 2025.


s/Jennifer A. Pancratz_____
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC