**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terence William McDonough, et al., | No. CV-24-00764-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Michael J Bidwill, et al., | |
| Defendants. | |

This order addresses whether attorney Michael W. Caspino should be sanctioned for the unauthorized practice of law and/or misrepresentations to the Court.

## BACKGROUND

I.      The Order To Show Cause

On February 10, 2025, the Court issued an order noting that Mr. Caspino "has appeared as one of Plaintiffs' attorneys in this action and has signed or jointly signed several of Plaintiffs' filings" and "is also identified as counsel of record in the caption and/or signature block of several other of Plaintiffs' filings," despite having been "suspended from practicing in this District some time ago." (Doc. 76 at 1.)  The Court further noted that "[u]nder LRCiv 83.1(e),[1] '[a]n attorney who . . . during disbarment or suspension exercises any of the privileges of a member of this bar, or who pretends to be entitled to do so, is subject to appropriate sanctions after notice and opportunity to be

---

[1]      "LRCiv" is the District of Arizona's abbreviation for the Local Rules of Civil Procedure.

heard.'" (*Id.*)  The Court concluded: "It should go without saying that Mr. Caspino will not be allowed to present oral argument on Plaintiffs' behalf during [an upcoming motion hearing] due to his suspended status.  Nevertheless, if Mr. Caspino wishes to be heard regarding the LRCiv 83.1 issues addressed above, the Court will provide him with an opportunity to speak at the beginning of the hearing regarding those issues."  (*Id.* at 1-2.)

On February 12, 2025, the parties filed a stipulation to vacate the scheduled oral argument.  (Doc. 77.)  The Court granted the stipulation and gave Mr. Caspino the opportunity to respond in writing to the notice that he was subject to sanctions "by filing a memorandum no later than February 19, 2025."  (Doc. 78.)  However, Mr. Caspino did not file a memorandum.

On March 26, 2025, the Court issued an order to show cause ("OSC") why Mr. Caspino should not be sanctioned for the unauthorized practice of law and/or misrepresentations to the Court, as Mr. Caspino had "represented (or allowed other attorneys to represent) that he had a pending application for *pro hac vice* admission in this case" in at least 13 filings between May 2024 and August 2024, despite not having attempted to file a *pro hac vice* application until June 2024 and then immediately being advised by the Court's attorney admissions staff that he could not file a *pro hac vice* application due to his status as a suspended member of the Arizona State Bar.  (Doc. 84 at 1-2.)  The Court set an April 28, 2025 hearing to allow Mr. Caspino to "show cause . . . why sanctions should not be assessed against him for practicing law in this District while suspended from doing so and for misrepresenting his status to the Court."  (*Id.* at 2.)  The Court noted that Mr. Caspino could be subject to a fine or further suspension and noted that Mr. Caspino "must be afforded all of the procedural protections required for due process before a punitive sanction can be assessed."  (*Id.* at 3.)  To ensure that due process was afforded, the Court ordered Mr. Caspino to "be prepared to advise the Court at the show-cause hearing whether he intends to exercise any or all of [various] rights." (*Id.* at 3-4.)

…

## II.    The OSC Hearing

During the April 28, 2025 OSC hearing, Mr. Caspino explained that "[s]even or eight years ago," he decided he no longer needed his Arizona Bar membership and thus stopped paying his fees with the assumption he would "be taken off the [roll] of attorneys." (Doc. 91 at 4.)  Mr. Caspino stated he "was never given a notice of suspension by the Bar," such that "the first indication" he had of his suspension was when he attempted to submit a *pro hac vice* application in this case in June 2024.  (*Id.*)  Mr. Caspino further stated that upon learning he was a suspended member of the Arizona Bar and therefore unable to apply for *pro hac vice* status in the District of Arizona, he spoke with the Bar and discovered that "[i]t is a very difficult process to get reinstated" following a suspension.  (*Id.*)  Mr. Caspino stated that he requested to be allowed to "simply . . . resign from the Bar so that [he] would no longer be an Arizona attorney, wouldn't be subject to suspension, and could come to this court as a *pro hac vice* attorney."  (*Id.*)  However, resignation was apparently not a permissible means of dispensing with the suspension, and Mr. Caspino stated that the Bar informed him of the steps he would need to take and that at least one step "can take up to three to four months."  (*Id.* at 4-5.)  Mr. Caspino also disclosed that on the morning of the OSC hearing, he had received notice from the Arizona Bar that his application to be reinstated had finally been approved, subject to his payment of an outstanding sum of money, and that he planned "on being reinstated immediately" upon paying the sum "and then resigning" so he could submit a *pro hac vice* application in this case.  (*Id.* at 5.)

As for his earlier representations to the Court concerning his admissions status, Mr. Caspino stated that "*pro hac vice* pending" is the phrase he "consistently" uses "for the time period where the lawsuit is filed and the *pro hac vice* motion has not been filed."  (*Id.*)  Mr. Caspino indicated that, in the future, he will "use the word 'forthcoming' rather than 'pending,' but this was no attempt at all whatsoever to hoodwink the Court or to hoodwink anybody whatsoever."  (*Id.* at 6.)  Mr. Caspino also asserted that "there was no damage done" because he "had a partner . . . immediately *pro hac* into this case" and that "since the Court brought this to [his] attention," he "completely pulled off the case immediately."

(*Id.*)

The Court asked Mr. Caspino how he justified continuing to represent himself as "*pro hac* pending" in court filings throughout July and August 2024 after being "informed point blank" by the Court's attorney admissions staff on June 6, 2024 that he was not allowed to file a *pro hac vice* application. (*Id.* at 7-8.) Mr. Caspino replied that "*pro hac* pending" was not meant to indicate that the *pro hac vice* application had already been filed but merely that its filing was "imminent." (*Id.* at 8.) The Court asked: "How is it imminent if you were just told you're not allowed to file one?" (*Id.*) Mr. Caspino replied that "for quite some time," he was "waiting on an answer from the Bar as to whether or not [he] could immediately go ahead and resign." (*Id.*) Mr. Caspino added that it "took a long time for them to get back to [him] to say no"—"probably 60 days"—and that he then "had to make up all of the CLE" and get a certificate of good standing and record of discipline from the California State Bar, noting that "these things take time." (*Id.* at 8-9.) The Court asked if it was Mr. Caspino's belief that it was permissible during the period after June 6, 2024 to keep using the phrase "*pro hac vice* pending" because he believed that the suspension "would shortly get resolved" and he would be filing a *pro hac vice* application after that, and Mr. Caspino confirmed that this was his belief. (*Id.* at 9.)

The Court next asked why, even as of the date of the OSC hearing, Price Caspino (Mr. Caspino's law firm) continued to represent on its website that Mr. Caspino is licensed in the State of Arizona when he had been aware for seven or eight years that he was no longer an active member of the Arizona Bar (and assertedly understood, at least as of June 6, 2024, that he was a suspended member of the Arizona Bar). (*Id.* at 10-11.) Mr. Caspino responded that it was "a very old entry that was taken over from a previous website" and was "either in the process of getting taken down" or was already "taken down." (*Id.* at 11.) When the Court stated it was surprising that this was not fixed before the hearing, because the Court had pointed out the inaccurate website information in the OSC issued on March 26, 2025, Mr. Caspino replied that he had asked the firm's office manager "to take care of that" and "didn't follow up." (*Id.* at 11.)

The Court next asked why, on a number of occasions during the period before Mr. Caspino attempted to apply for *pro hac vice* status, as well as after he found out he was not allowed to do so, he was "the actual person" signing the filings (not "just identified on the letterhead") and was the sole attorney who signed "a potentially quite important filing," the opposition to the motion to dismiss, even though he had not been admitted and he knew at that point that he was suspended. (*Id.* at 11-12.) Specifically, the Court asked: "How is it okay for you to be practicing law in this district when you have knowledge of all these things?" (*Id.* at 12.) Mr. Caspino replied: "It may have been my signature on there, but I didn't write most of that, I can assure you." (*Id.*) He added: "I don't recall the circumstances surrounding that. I just don't." (*Id.*) When the Court asked if it was "a usual practice" for him to just "sign things" that were written by other people, Mr. Caspino replied: "No. No, not at all. I never do. I read everything that I sign. Absolutely." (*Id.* at 13.) When asked if he read the opposition brief he signed, he stated: "Read it several times." (*Id.*)

The Court noted that defense counsel was present at the hearing and asked if defense counsel had anything to add or be heard on. (*Id.*) One of the defense attorneys expressed reluctance because this was "a matter between the Court and Mr. Caspino" but stated that "having heard Mr. Caspino's statements," a few things needed to be said "just to make sure the record is clear." (*Id.* at 13.) First, the attorney stated that the defense team had been "dealing with Mr. Caspino as lead counsel for plaintiffs in the case" from its inception (*i.e.,* April 2024) up through February 2025. (*Id.* at 13-14.) Second, the attorney stated that Mr. Caspino had, in February 2025, initiated another case in Arizona state court against the same defendants in this case, had signed the complaint, and just a week before the hearing, on April 18, 2025, had emailed defense counsel with an amended complaint and the message: "Attached is an amended complaint which we intend to file that adds two new plaintiffs." (*Id.* at 14-15.) Third, the attorney noted that on April 12, 2025, Mr. Caspino signed a declaration in support of an application for *pro hac vice* admission in the Common Pleas Court in Pennsylvania in which he attested that he had never been suspended. (*Id.* at

15.) Fourth, the attorney suggested that Mr. Caspino had been admitted *pro hac vice* in the Southern District of New York on January 23, 2025 and noted that normally those applications are not granted if a suspension is disclosed. (*Id.*)[2] Mr. Caspino did not deny any of these assertions or otherwise ask to be heard in response to them.

The Court then asked Mr. Caspino whether he wished to avail himself of any of the procedural rights that can apply when facing the possibility of a serious sanction. (*Id.* at 16.) Mr. Caspino responded that he "would not consider a modest monetary sanction to be serious," especially because he averred that he had to pay between $5,000 and $10,000 to be reinstated with the Arizona Bar, so he would not see a sanction within that range as serious. (*Id.* at 17.)

## DISCUSSION

### I.   Legal Standard

District courts have "the power to issue sanctions under local rules," which power is derived from either "the trial court's inherent power" or the authority "expressly granted [by Congress] to the various district courts . . . to promulgate rules governing [their] practice." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989). There are "limitations on both roots of power." *Id.* An exercise of the Court's inherent power requires "a finding of bad faith." *Id.* (emphasis omitted). In contrast, the authority to sanction attorneys derived from "the legislative grant of authority to promulgate rules" "stems from a broader base than its inherent authority" and does not require a bad-faith finding. *Id.* at 1479. The authority "to impose a 'relatively mild' form of sanctions as a means of preserving authority and control over the district bar . . . is implicit in the right to make rules for the orderly administration of justice." *Id.* "Several factors limit the district court in this regard":

---

[2]      The Court takes judicial notice that on January 23, 2025, Mr. Caspino filed an Appearance of Counsel in *Flores v. The National Football League et al*, 1:22-cv-00871-VEC, in the Southern District of New York, stating "I am admitted or otherwise authorized to practice in this court." *Id.*, Dkt. No. 135. He signed the appearance with a "*Pro Hac Vice* Pending" designation. *Id.* However, as of the date of this order, it is unclear whether he has submitted an application to appear *pro hac vice*, which, in the Southern District of New York, must be electronically filed. https://www.nysd.uscourts.gov/attorney/prohac.

> First, by the terms of the statute, sanctions must be consistent with the Federal Rules and with other statutes. Second, the order must be necessary for the court to carry out the conduct of its business. There must be a close connection between the sanctionable conduct and the need to preserve the integrity of the court docket or the sanctity of the federal rules. Third, the order must be consistent with principles of right and justice. Finally, any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction.

*Id.* at 1480 (cleaned up).

"Attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment," but "conduct amounting to recklessness, gross negligence, repeated—although unintentional—flouting of court rules, or willful misconduct" can warrant "the imposition of monetary sanctions under local rules." *Id.* "When monetary sanctions or a contempt citation are criminal in nature," "the full panoply of procedural protections that are normally reserved for defendants charged with a criminal offense" "may be required," but "[i]n contrast, civil sanctions may be imposed so long as the court provides adequate notice and an opportunity to be heard." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

Separate from the Court's power to assess monetary sanctions, "upon a finding or acknowledgement that the lawyer has engaged in professional misconduct," the Court has the power to sanction attorneys, commensurate with the severity of their misconduct, with disbarment, suspension, reprimand/censure ("public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice"), admonition ("private reprimand"), and probation. ABA Standards for Imposing Lawyer Sanctions (hereinafter "ABA Standards"), Part B.[3] *See also Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1159 (9th Cir. 2024) ("[I]t is appropriate for a circuit court imposing discipline under Fed. R. App. P. 46 to consider the ABA's Standards for Imposing Lawyer Sanctions.") (cleaned up); *In re Girardi*, 611 F.3d 1027, 1038 (9th Cir. 2010) ("The ABA

---

[3] https://cdn.ca9.uscourts.gov/datastore/library/2013/02/26/Girardi_sanctions.pdf.

Standards provide a range of discipline for misrepresentations to a court . . . ."). "Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct. The nature of a disciplinary proceeding is neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent. At a minimum, however, an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Standing Comm. on Discipline of U.S. Dist. Ct. for S. Dist. of California v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984) (cleaned up).

Pursuant to the Court's local rules, "[a]dmission to and continuing membership in the bar of this Court is limited to attorneys who are active members in good standing of the State Bar of Arizona." LRCiv 83.1(a). "[O]nly members of the bar of this Court may practice in this District," except for certain U.S. government attorneys, certain tribal attorneys, law school students certified to practice under LRCiv 83.4, and attorneys admitted to practice *pro hac vice*. LRCiv 83.1(b). A *pro hac vice* application "must state under penalty of perjury," *inter alia*, "by what courts the attorney has been admitted to practice and the dates of admissions," "that the attorney is in good standing and eligible to practice in those courts," and "that the attorney is not currently suspended, disbarred or subject to disciplinary proceedings in any court." LRCiv 83.1(b)(2). "An attorney who, before admission or permission to practice *pro hac vice* has been granted, unless specially authorized by one of the judges, or during disbarment or suspension exercises any of the privileges of a member of this bar, or who pretends to be entitled to do so, is subject to appropriate sanctions after notice and opportunity to be heard." LRCiv 83.1(e).

"[I]t is well established that admission to a bar of a district court usually requires that the applicant be a member in good standing of the bar of a state's highest court," a requirement that is "well within the District Court's rule making power." *Gallo v. U.S. Dist. Ct. For Dist. of Arizona*, 349 F.3d 1169, 1184 (9th Cir. 2003). "Requiring either membership in the State Bar of Arizona or *pro hac vice* status is rationally tailored to serve the District Court's legitimate interest in regulating the conduct and ethical fitness of lawyers who practice before it." *Id.* at 1185.

"[T]he application to appear *pro hac vice* is a requirement which is designed to protect the integrity of the Court and to allow courts to enforce the standards which they have adopted for admissions of attorneys to practice on a case-by-case basis.  Absent a properly admitted *pro hac vice* applicant, an attorney may be engaging in the unauthorized practice of law."  *Curtis v. BCI Coca-Cola Enters. Bottling Cos.*, 2014 WL 4417741, *4 (E.D. Cal. 2014).  Signing briefs and identifying oneself as counsel during discussions with opposing counsel are "appearances" that squarely fall into the category of practicing law.  *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823-24 (9th Cir. 2009); *United States v. Wunsch*, 84 F.3d 1110, 1115 (9th Cir. 1996).

"In addition to case law and applicable court rules, the court may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession."  *In re Girardi*, 611 F.3d at 1035.  Under the Arizona Rules of Professional Conduct in the Rules of the Supreme Court of the State of Arizona, which apply to attorneys who practice before this Court pursuant to LRCiv 83.2(e), "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction."  A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 5.5(a).[4]

A lawyer also has a duty of candor toward the tribunal and "shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 3.3(a)(1).  "It is counsel's job, and indeed their duty as officers of the court, to ensure that the facts they place before [the Court] are accurate and not misleading."  *Taylor v. AutoZone Inc.*, 2012 WL 4061758, *3 (D. Ariz. 2012). "[T]he court need not find squarely intentional conduct to impose serious discipline . . . for misrepresentations made to the court."  *In re Girardi*, 611 F.3d at 1037-38. "[M]isrepresentation cannot be taken lightly" because the Court "relies on the lawyers

---

[4]    Furthermore, absent exceptions that are inapplicable here, "a lawyer who is not admitted to practice in Arizona shall not . . . hold out to the public or otherwise represent that the lawyer is admitted to practice Arizona law." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 5.5(b)(2).

1    before it to state clearly, candidly, and accurately the record as it in fact exists." *Id.* at 1037.

2        "In assessing the appropriateness of a particular disciplinary sanction," the Court

3    "may consider, although it is not bound by, the ABA's Standards for Imposing Lawyer

4    Sanctions." *Id.* at 1035. "Under these standards, a court should generally consider: (a) the

5    duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the

6    lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* at

7    1036.

8    II.   <u>Analysis</u>

9        The Court has no trouble concluding that Mr. Caspino engaged in the unauthorized

10   practice of law. The complaint—which designates Mr. Caspino as counsel for Plaintiffs,

11   "*Pro Hac Vice* Application Pending"—was filed in Maricopa County Superior Court on

12   April 3, 2024 (Doc. 1-3 at 1) and removed the following day. (Doc. 1.) Mr. Caspino first

13   appeared before this Court on May 2, 2024, when he signed the motion to remand, with

14   the designation in his signature block "*Pro Hac Vice* Application Pending." (Doc. 26 at 5.)

15   On May 23, 2024, he signed the reply in support of that motion, this time with no such

16   designation in his signature block, but "(*pro hac vice* pending)" was included with his

17   appearance information on the title page. (Doc. 33 at 1, 4.) These appearances were

18   indisputably the unauthorized practice of law because Mr. Caspino had not yet even

19   attempted to apply for *pro hac vice* status. Mr. Caspino has not explained why he waited

20   two months after the case's inception to attempt to file a *pro hac vice* application or offered

21   any explanation for why it was permissible to practice law "before . . . permission to

22   practice *pro hac vice* has been granted," contravening LRCiv 83.1(e), during the two

23   months before his June 6, 2024 attempt.

24       After June 6, 2024, which is when Mr. Caspino contends he first learned that he was

25   a suspended member of the Arizona Bar and thus could not apply for *pro hac vice* status in

26   this Court, Mr. Caspino continued his unauthorized practice of law for the next eight

27   months. That unauthorized practice ceased only after the Court issued its February 10,

28   2025 order addressing the issue. During the OSC hearing, Mr. Caspino downplayed his

involvement in the case during that period by stating that he did not draft any of the court filings—even the one on which he was the sole signing attorney—but signing them is enough to constitute the practice of law. *Winterrowd*, 556 F.3d at 823-24. Furthermore, opposing counsel stated that he had been "dealing with Mr. Caspino as lead counsel for plaintiffs in the case" from its inception in April 2024 up through February 2025, which Mr. Caspino did not deny or otherwise address. Thus, during the eight-month period between June 2024 and February 2025, Mr. Caspino knew that he was unauthorized to practice law in this case—indeed, that he was suspended from practicing law in Arizona—and chose to do so regardless. This conduct doubly contravenes LRCiv 83.1(e), which subjects an attorney to sanctions for the unauthorized practice of law if he "exercises any of the privileges of a member of this bar" either (1) "before . . . permission to practice *pro hac vice* has been granted" or (2) "during disbarment or suspension." From June 6, 2024 until February 10, 2025, Mr. Caspino practiced law both before obtaining permission to practice *pro hac vice* and during suspension, and he did so knowingly.

As for the issue of misrepresentations to the Court, Mr. Caspino's proffered justification for his use of the phrase "*pro hac vice* pending" is unpersuasive. Mr. Caspino asserts that it is his practice to use the phrase "*pro hac vice* pending" to denote that he intends to file a *pro hac vice* application at some unspecified point in the future. Such verbiage is misleading and contrary to both common sense and settled usage. In the field of law, when something is "pending," it has already been filed or commenced and is pending resolution. *See, e.g., Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) ("The dictionary defines 'pending' (when used as an adjective) as 'in continuance' or 'not yet decided.' . . . [A]n application is pending as long as the ordinary state collateral review process is 'in continuance'—*i.e.,* 'until the completion of' that process. In other words, until the [properly filed] application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"); *United States v. Hovsepian*, 359 F.3d 1144, 1165 (9th Cir. 2004) ("[L]ogically, a removal proceeding cannot be 'pending' before it has 'commenced' . . . ."); *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F.

Supp. 3d 830, 835-36 (M.D. Tenn. 2018) (concluding that a case is "pending" only after it is filed and noting that "[t]he Sixth Circuit Court of Appeals, Black's Law Dictionary, and Wright & Miller's learned legal treatise all agree").  The *sine qua non* for an application to be "pending" is acceptance by the Clerk of Court.  *Artuz v. Bennett*, 531 U.S. 4, 9 (2000) ("If . . . an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending,* but not *properly filed.*").  Thus, Mr. Caspino's characterization of his status as "*pro hac vice* pending" in multiple court filings before June 6, 2024 (Docs. 26, 33, 37, 38, 39) was inaccurate and misleading.

Moreover, when Mr. Caspino attempted to file a *pro hac vice* application on June 6, 2024, it was not accepted by the Court's attorney admissions staff.  The attorney admissions clerk stated, in an email to Mr. Caspino's assistant, "I cannot accept a *pro hac vice* with him already in the database with a suspended status in our records."  This was either a rejection or a denial of the application—either way, the application could not be said to be "pending" following this unambiguous refusal of acceptance.  Thus, Mr. Caspino's characterization of his status as "*pro hac vice* pending" in multiple court filings after June 6, 2024 and through August 5, 2024 (Docs. 49, 50, 51, 54, 64, 65) remained inaccurate and misleading.  Indeed, even under Mr. Caspino's proffered justification for the use of the phrase "*pro hac vice* pending," the word "pending" necessarily must convey imminence or it loses all meaning.  When Mr. Caspino wrote the words "*Pro Hac Vice* Pending" in his signature block or title page information, he surely could not have meant, "Someday, days or weeks or months from now, I intend to file a *pro hac vice* application, such that my application is 'pending' me getting around to it," or worse, "My *pro hac vice* application definitely won't be filed for at least a few months, 'pending' resolution of a lengthy State Bar reinstatement process I have entirely neglected to mention to the Court." In May 2024, perhaps Mr. Caspino truly intended to file his *pro hac vice* application immediately upon signing the motion to remand, and then the reply thereto, and both times simply forgot to do so—a generous supposition that was not advanced as an excuse by Mr.

Caspino himself. But after the attorney admissions clerk informed Mr. Caspino in June 2024 that he could not submit a *pro hac vice* application because he was suspended, there was no realistic way for Mr. Caspino to apply for *pro hac vice* status without initiating and completing an entirely separate process.

As an aside, it bears emphasizing that even if the filings Mr. Caspino signed had not been misleading—for example, if the signature block had stated "*pro hac vice* application anticipated to be filed at some point within the next several months"—he still would have been engaging in the unauthorized practice of law. Announcing that one is engaging in the unauthorized practice of law does not make that practice okay. Thus, strictly speaking, an attorney should never sign a brief or otherwise appear in a case with a "*pro hac vice* application forthcoming" designation or a "*pro hac vice* application pending" designation because both designations announce that the attorney is doing something that is expressly prohibited by LRCiv 83.1(e)—practicing law in this District before receiving authorization to do so.[5]

---

[5]    That said, minor infractions seldom if ever should be met with sanctions beyond a rebuke. *See, e.g.*, *Zambrano*, 885 F.2d at 1484-85 ("[W]e cannot be blind to the situations where trial courts overreact to perceived or minor slights. Here, there is no indication in the record that counsel were guilty of anything more than simple negligence. . . . [T]he authority of the court to punish violations of local rules should be reserved for serious breaches."); *id.* at 1480 n.24 ("As anyone experienced in litigation knows, lectures in open court are often sufficient to press home the significance of local rules, particularly for a first offense. Public embarrassment is, beyond cavil, a powerful motivator of human conduct."). The Court does not have occasion, in this case, to determine whether a fleeting violation of LRCiv 83.1(e)—*e.g.*, the signing and filing of a pleading or motion by an attorney who truthfully asserts that a *pro hac vice* application is pending or forthcoming and then is granted *pro hac vice* status within the next few days—should be subject to sanctions. *But see Isom v. Valley Forge Ins. Co.*, 2016 WL 4183315, *2 (S.D. Miss. 2016) ("The Mississippi Supreme Court has clearly stated that a counsel's name and office address appearing on a pleading constitutes an appearance under Mississippi law. In making an appearance, an attorney holds himself out to be representing a client. The Court does not find it of any consequence, then, that Gary and Brown were listed as 'Of Counsel and pending *Pro Hac Vice*,' because, by allowing their names to be on the Complaint, they held themselves out to be representing Plaintiff and were engaged in the unauthorized practice of law in the state of Mississippi.") (cleaned up); *Matter of Nevins*, 2014 WL 1813277, *2 (V.I. 2014) ("This Court has repeatedly emphasized that holding oneself out as a licensed Virgin Islands attorney, or the doing of acts ordinarily done only by a member in good standing of the Virgin Islands Bar Association, constitutes the unauthorized practice of law in the Virgin Islands. . . . The fact that the signature page—but not the cover—of Appellants' Brief included the words '*pro hac vice* application pending' after Nevins's name does not render his conduct any less improper."). *See also In re Autozoners, LLC*, 687 S.W.3d 315, 325 (Tex. Ct. App. 2022) (Alley, J., concurring) ("Because in a technical sense, Autozoner's non-admitted attorneys appeared when the answer was filed,

Having determined that Mr. Caspino engaged in the unauthorized practice of law for 10 months while suspended, and did so with knowledge of his suspension such that the unauthorized practice of law was willful for at least eight months, and also having determined that Mr. Caspino misrepresented his status to the Court by repeatedly asserting that his *pro hac vice* application was "pending," the Court now turns to the matter of sanctions. Before determining what disciplinary sanction, if any, is appropriate, the Court will consider "(a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *In re Girardi*, 611 F.3d at 1036.

### A.   The Duties Violated

Mr. Caspino engaged in the unauthorized practice of law, in violation of ER 5.5, LRCiv 83.1(b) and 83.1(e), and Arizona Supreme Court Rule 31.2. Such conduct violates duties owed as a professional under ABA Standard 7.0, "although it may violate duties owed to clients, the public, or the legal system as well." *In re Non-Member of State Bar of Arizona, Van Dox*, 152 P.3d 1183, 1186 (Ariz. 2007). This would be the case if the conduct at issue were simply practicing law before having been granted *pro hac vice* status. However, Mr. Caspino's unauthorized practice of law was during a period of suspension, such that it also violates a separate provision of LRCiv 83.1(e) as well as the terms of his suspension order and constitutes abuse of the legal system under ABA Standard 6.2 ("failure to obey any obligation under the rules of a tribunal"). Some courts also see this as a violation of an attorney's duty to the public. *In re Conduct of Koliha*, 9 P.3d 102, 104-05 (Or. 2000) ("By practicing law during a period of suspension, the accused violated her duty to the public and as a professional to refrain from the unauthorized practice of law.").

---

the trial court did not err in concluding they technically violated the unauthorized practice of law rules for our state. . . . [But] when the answer was filed, there was no controlling Texas authority that would have guided counsel in preparing the answer. Our research has found only one state and one U.S. territory that have enunciated the rule. And looking to other states, some attorneys have apparently engaged in this practice without adverse consequence. . . . But going forward in Texas, attorneys should be on notice that they should omit non-admitted attorneys on a signature block until a *pro hac vice* application is granted.").

Finally, Mr. Caspino also made misrepresentations to the Court by holding himself out as "*pro hac vice* pending," violating ER 3.3(a)(1) as well as a duty owed to the legal system under ABA Standard 6.1 ("conduct . . . that involves dishonesty, fraud, deceit, or misrepresentation to a court").

### B.    The Lawyer's Mental State

The Court has little information about Mr. Caspino's mental state during the period between initiation of this lawsuit and his June 6, 2024 attempted submission of a *pro hac vice* application, as Mr. Caspino did not address this period during the show-cause hearing. However, because Mr. Caspino signed filings that stated that his *pro hac vice* application was pending, it is clear he knew he had not yet been granted *pro hac vice* status (and, thus, was not authorized to practice law in the District of Arizona). It follows that his conduct during this time equated to the knowing unauthorized practice of law.

As of June 6, 2024, Mr. Caspino (1) still knew he had not been granted *pro hac vice* status (and, thus, was not authorized to practice law in the District of Arizona), (2) further knew he would not be allowed to submit a *pro hac vice* application until a separate process with the Arizona Bar (which he eventually learned would take months to complete) was initiated and completed, and (3) knew he was suspended from practicing law in the State of Arizona. Thus, his conduct between June 6, 2024 and February 2025 again equated to the knowing unauthorized practice of law and knowing violation of his suspension.

Turning to the question of misrepresentations, both before and after he unsuccessfully attempted to file a *pro hac vice* application, Mr. Caspino repeatedly represented to the Court that his application was "pending." As discussed above, this was misleading, particularly given Mr. Caspino's acknowledgement that he eventually learned it would take months before he would have any chance of reinstating his admission to the Arizona Bar (which, he knew, was a prerequisite to submitting a future *pro hac vice* application). Even so, affording Mr. Caspino the benefit of the doubt, the Court will not ascribe a "knowing" mental state to Mr. Caspino regarding his use of the word "pending" and will instead deem these misrepresentations "negligent" or "reckless."

1        **C.      Actual Or Potential Injury Caused By The Lawyer's Misconduct**

2        "[T]he unauthorized practice of law inherently carries with it the potential to injure

3 the legal system." *Koliha*, 9 P.3d at 105.  Furthermore, Mr. Caspino's unauthorized practice

4 of law while suspended "constituted a breach of his responsibility to the public to carefully

5 abide by his ethical duties."  *Matter of Schum*, 2025 WL 238916, *10 (D. Haw. 2025).

6 Courts have held that a person who practices law during a suspension causes "serious injury

7 to the legal system and the legal profession by knowingly disobeying disciplinary orders

8 and rules," which "undermines the authority of the court."  *People v. Kanwal*, 357 P.3d

9 1236, 1242 (Colo. O.P.D.J. 2015).

10       **D.      Aggravating and Mitigating Factors**

11       The ABA Standard lists various factors which "may be considered" in aggravation,

12 ABA Standard 9.22, or in mitigation, ABA Standard 9.31.

13               1.      Aggravating Factors

14       One of the aggravating factors is "submission of false evidence, false statements, or

15 other deceptive practices during the disciplinary process."  ABA Standard 9.22(f).

16       During the OSC hearing, the Court asked: "[W]hat do I do with the fact that even—

17 throughout this period and even as of today, your firm's website continues to represent you

18 as licensed in the State of Arizona when you've been suspended this whole time?"  (Doc.

19 91 at 10-11.)  Mr. Caspino answered as follows: "Your honor, that's a very old entry that

20 was taken from a previous website. . . .  [I]t's either in the process of getting taken down

21 or is taken down . . . ."  (*Id.* at 11.)

22       Although the Court has attempted to give Mr. Caspino the benefit of the doubt when

23 it comes to many  debatable  issues  in  this  proceeding,[6]  it  is  difficult  to  accept  this

---

24       [6]      For example, as noted above, the Court has concluded that Mr. Caspino's
25 mischaracterization of his status as "*pro hac vice* pending" was reckless or negligent rather
than intentional.  Additionally, the Court has accepted Mr. Caspino's assertion that his "first
26 indication" that he was suspended came when he attempted to file a *pro hac vice* application
in this case in June 2024 (Doc. 91 at 4), even though that representation is difficult to
27 reconcile with the procedure set forth in Rule 62 of the Rules of the Arizona Supreme Court
for summarily suspending a member for failure to pay annual membership fees or submit
28 mandatory CLE.  Under Rule 62, Bar counsel is required to "provide a request for summary
suspension to the board stating the grounds for and referring to the rule authorizing the
order" and then serve a copy of that request on the attorney "by certified mail, return

explanation at face value.  At the time of the OSC hearing, Mr. Caspino had not been licensed in Arizona for many years, and he has worked for at least three law firms since he was suspended—Buchalter Nemer, Forward Counsel LLP, and Price Caspino.  It appears he was working at Forward Counsel LLP from the time of this case's inception in April 2024 (Doc. 1-3) through at least August 5, 2024 (Doc. 65).  At some point between August 2024 and February 2025, Mr. Caspino left Forward Counsel and joined Price Caspino, where he is one of the name partners.  It is hard to believe that the biographical information for a name partner on the new website of a newly formed law firm would prominently advertise that he is licensed to practice in Arizona and that this glaring misrepresentation was maintained throughout multiple transitions from one law firm to another through sheer negligence.  The biography is only nine sentences long and it was clearly updated upon the formation of Price Caspino, as it includes the lines, "Prior to Price Caspino, Mike was a partner with Buchalter.  He served as the Litigation Department Chair for Buchalter's Orange County office."  *See* https://www.pricecaspino.com/michael-caspino (last visited June 2, 2025).  It is hard to accept that Mr. Caspino updated his biography and failed to notice the false statement that he was licensed to practice in Arizona—a statement that would have been false on the websites of his previous two law firms, as well.[7]

Several other aggravating factors are also implicated here.  Mr. Caspino has "substantial experience in the practice of law," which is an aggravating factor, ABA Standard 9.22(i), because experienced attorneys can be expected to know better—whereas "inexperience in the practice of law" is a mitigating factor, ABA Standard 9.32(f).

That there are multiple offenses—both the unauthorized practice of law and misrepresentations to the Court (two separate offenses, both of which recurred over a

---

receipt."  A.R.S. Sup. Ct. Rules, Rule 62(b).  And after the board enters an order of summary suspension, it is mailed to the attorney within 10 days of entry of the order.

[7]      Moreover, when the Court said it was surprising that even with a show-cause hearing coming up, the false information was not removed from the website, Mr. Caspino said, "I did ask our office manager to take care of that."  (Doc. 91 at 11.)  It is difficult to believe that one of the name partners at the firm asked the office manager to remove false and unethical information from the website but that directive was ignored (and has continued to be ignored since the OSC hearing).

period spanning 10 months)—is another aggravating factor.  ABA Standard 9.22(d).

Unauthorized practice of law is done with a "selfish motive" when undertaken for a paying client, *Kanwal*, 357 P.3d at 1242, or in "an effort to preserve a relationship with a client that would be remunerative in the future," *Schum*, 2025 WL 238916 at *10, and therefore this is another aggravating factor.  ABA Standard 9.22(b).

Finally, there appears to be a "pattern of misconduct," ABA Standard 9.22(c), some of which appears to be ongoing.  The State Bar of Nevada lists Mr. Caspino's status as "suspended," s*ee*    https://nvbar.org/for-the-public/find-a-lawyer/?usearch=caspino ("Status: ATTORNEY Suspended.") (last visited June 2, 2025), and the State Bar of Colorado lists Mr. Caspino's status as someone who was originally admitted in February 2005 but is now "[n]ot an active member of CO-BAR."  *See* https://www.licensedlawyer.org/Find-a-Lawyer/Profile/u/2020029/Michael-Caspino  (last visited June 2, 2025).  Nevertheless, Mr. Caspino's biography on the Price Caspino website currently states, and has stated throughout the pendency of the OSC proceedings, that Mr. Caspino "is licensed to practice in Arizona, California, Colorado, and Nevada."  *See* https://www.pricecaspino.com/michael-caspino (last visited June 2, 2025).  Under ABA ER 5.5, not only is the unauthorized practice of law forbidden, it is also forbidden to hold oneself out to the public as admitted to practice in a jurisdiction where practicing would violate the regulation of the legal profession in that jurisdiction—in other words, where an attorney is suspended, inactive, or a non-member.

Furthermore, during the OSC hearing, defense counsel asserted that Mr. Caspino had, in February 2025, initiated another case in Arizona state court against the same defendants in this case, had signed the complaint, and just a week before the hearing, on April 18, 2025, had emailed defense counsel with an amended complaint and the message: "Attached is an amended complaint which we intend to file that adds two new plaintiffs." (Doc. 91 at 14-15.)  This was before Mr. Caspino was reinstated by the Arizona Bar and therefore is another instance, separate from this case, of Mr. Caspino practicing law in Arizona in violation of his suspension.

Finally, Mr. Caspino recently made a false statement in support of a *pro hac vice* application in the Court of Common Pleas of Philadelphia County. On April 2, 2025, one week *after* the Court issued an OSC "why sanctions should not be assessed against him for practicing law in this District while suspended from doing so and for misrepresenting his status to the Court," Mr. Caspino signed and submitted a verified statement in which he avowed: "I have not been suspended, disbarred, or otherwise disciplined in any jurisdiction. I am not subject to any disciplinary proceedings in any jurisdiction." *See* Appendix A to this order. It is difficult to identify a benign explanation for this false statement, particularly given its timing.

### 2.    Mitigating Factors

"Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. The ABA lists various mitigating factors "which may be considered." ABA Standard 9.32.

One of the factors is "remorse." ABA Standard 9.32(l). During the OSC hearing, Mr. Caspino apologized "for all the confusion surrounding this"—he said he was "truly sorry." (Doc. 91 at 4.) Even though, as explained elsewhere in this order, the Court does not find some of Mr. Caspino's explanations for his conduct to be persuasive (and finds that certain other proffered explanations stretch the bounds of credulity), the Court still concludes that Mr. Caspino is genuinely remorseful for his conduct.

Additional mitigating factors include "timely good faith effort to make restitution or to rectify consequences of misconduct," ABA Standard 9.32(d), and imposition of other penalties or sanctions, ABA Standard 9.32(k). Mr. Caspino's suspension by the Arizona Bar formed the backdrop for much of the challenged conduct here, and he has now expended substantial effort and money to rectify and overturn that suspension. Those efforts, to be clear, do not excuse his conduct in this case, but they do serve as some measure of mitigation.

During the OSC hearing, Mr. Caspino also identified, as a mitigating factor, that "I've been practicing 30 years" and "[n]ever been disciplined." (Doc. 91 at 7.) Although

1     Mr. Caspino is correct that the "absence of a prior disciplinary record" is a mitigating factor

2     under ABA Standard 9.32(a), Mr. Caspino overlooks that he has sustained past suspensions

3     by the Arizona and Nevada bars.    Even though it appears the only cause of those

4     suspensions was Mr. Caspino's decision to stop paying bar dues, it is still possible to

5     conceptualize them as prior disciplinary offenses, in which case they would qualify as

6     aggravating factors under ABA Standard 9.22(a).  At any rate, under the circumstances, the

7     Court concludes that Mr. Caspino's prior disciplinary record (or asserted lack thereof) is

8     neither an aggravating nor a mitigating factor.

9             E.        **Appropriate Sanction**

10            The preface to the ABA Standards explains:

11            The standards do not account for multiple charges of misconduct.    The
              ultimate sanction imposed should at least be consistent with the sanction for
12            the most serious instance of misconduct among a number of violations; it
              might well be and generally should be greater than the sanction for the most
13            serious misconduct.   Either a pattern of misconduct or multiple instances of
              misconduct should be considered as aggravating factors.
14
      ABA Standards at 12.
15
              "The unauthorized practice of law is a serious ethical violation, and one that would
16
      usually result in a suspension, at least."  *Matter of Stevens*, 872 P.2d 665, 667 (Ariz. 1994).
17
      "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is
18
      a violation of a duty as a professional"—including unauthorized practice of law—"and
19
      causes injury or potential injury to a client, the public, or the legal system."  ABA Standard
20
      7.2.
21
              Mr. Caspino's unauthorized practice of law was knowing and forms part of a pattern
22
      of related conduct that includes falsely holding himself out as a licensed attorney in three
23
      jurisdictions and falsely representing in *pro hac vice* applications in other cases that he has
24
      never been suspended from the practice of law.    Additionally, Mr. Caspino has separately
25
      been found to have made reckless or negligent misrepresentations to the Court regarding
26
      the "pending" status of his *pro hac vice* application.    Even considering the presence of
27
      some mitigating factors, no sanction less severe than a one-year suspension would
28
      adequately address the seriousness of this collective conduct. *See, e.g.*, *Schum*, 2025 WL

238916 at *10 (one-year suspension for unauthorized practice of law while suspended); *Koliha*, 9 P.3d at 107 (one-year suspension for unlawful practice of law and failure to cooperate with disciplinary investigation); *In re Pelletier*, 84 A.3d 960, 964 (Del. 2014) (one-year suspension for unauthorized practice of law); *In re Williams*, 842 So. 2d 353, 357-58 (La. 2003) (two-year suspension for unauthorized practice of law during suspension where attorney "lacked a dishonest or selfish motive" and did not "consciously attempt[] to practice law in blatant disregard of the orders of the court").[8]

F.    **Reports To Appropriate Disciplinary Agencies**

The preface to the ABA Standards discusses the importance of reporting misconduct to all disciplinary agencies where misconduct has occurred:

> It cannot be emphasized strongly enough that lawyers and judges must report unethical conduct to the appropriate disciplinary agency. Failure to render such reports is a disservice to the public and the legal profession. Judges in particular should be reminded of their obligation to report unethical conduct to the disciplinary agencies. . . . Only if all lawyer misconduct is in fact reported to the appropriate disciplinary agency can the legal profession have confidence that consistent sanctions are imposed for similar misconduct.

ABA Standards at 5-6.

This order imposes discipline only for misconduct in the District of Arizona—the unauthorized practice of law and misrepresentations to the Court. The Court will also notify the State Bar of Nevada Office of Bar Counsel, the Colorado Supreme Court Office

---

[8]    Although, as noted above, courts often impose the sanction of a one- or two-year suspension for the unauthorized practice of law, courts have also imposed greater (and lesser) sanctions based on the particular circumstances of each case. *See, e.g., Kanwal*, 357 P.3d at 1242 (disbarment warranted where attorney "not only performed unauthorized legal services but also engaged in dishonest conduct"); *Stevens*, 872 P.2d at 666-67 (censure appropriate where attorney engaged in unauthorized practice of law for very short amount of time and "was not attempting to deceive anyone"); *Van Dox*, 152 P.3d at 1183 (informal reprimand appropriate where Florida attorney negligently engaged in unauthorized practice of law in Arizona under good faith belief that "participation in mediation was proper because the mediation was not court ordered and, in Florida, a certified mediator need not be an attorney" and where attorney was advised by a mediator, an ethics attorney, and a retired superior court commissioner that she could ethically proceed with the mediation). These outcomes are consistent with the notion that "[t]he unauthorized practice of law by a suspended or disbarred attorney is very serious misconduct. . . . In general, when the attorney has manifested a conscious intent to flout the authority of this court by practicing after being prohibited from doing so, we have not hesitated to impose disbarment. However, not all instances of the unauthorized practice of law warrant the most severe sanction." *Williams*, 842 So.2d at 358 (cleaned up).

of Attorney Regulation, Judge Linda Carpenter of the Court of Common Pleas of Philadelphia County, and U.S. District Judge Valerie E. Caproni of the Southern District of New York about the conduct discussed in this order that may violate the rules of those jurisdictions.

As for the State Bar of Arizona, Mr. Caspino was recently reinstated as a member in good standing, such that his suspension for nonpayment of fees and failure to submit mandatory CLE is resolved. Even still, the State Bar of Arizona should be informed about the violation of the suspension that occurred while the suspension was still in effect so it can make its own judgment about what else, if anything, to do with respect to that violation. *See, e.g.*, *In re Poole*, 222 F.3d 618, 620 (9th Cir. 2000) ("Admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included. . . . This is true even when admission to a federal court is predicated upon admission to the bar of the state court of last resort.").

The Court will also notify the State Bar of California, which has an interest in knowing about the conduct of its members. Cal. R. Prof. Conduct 8.5(a) ("A lawyer admitted to practice in California is subject to the disciplinary authority of California, regardless of where the lawyer's conduct occurs. . . . A lawyer may be subject to the disciplinary authority of both California and another jurisdiction for the same conduct.").

G.  **Conclusion**

It is with no joy that the Court imposes this sanction. Addressing attorney misconduct is an unpleasant duty, one the undersigned judge has rarely had occasion to shoulder.

For clarity's sake, the Court specifies that this order constitutes attorney discipline and must be disclosed on all future *pro hac vice* applications, in any jurisdiction. Additionally, as a suspended attorney, Mr. Caspino may not work on this case or any other case pending in the District of Arizona, including performing legal work that would not

qualify as an appearance and/or legal work that could be performed by a non-lawyer. *See, e.g.*, *Winterrowd*, 556 F.3d at 823 & n.4 (legal work that does not constitute an "appearance" may be permissible by an attorney who has not been admitted *pro hac vice* or by "paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar" but is impermissible by an attorney who "would *not* have been admitted *pro hac vice*" due to a "bar suspension"); *Schum*, 2025 WL 238916 at *7 ("Importantly, here, the question is not whether such a task would qualify as the practice of law for *any* layperson.  It is, instead, whether it constituted the practice of law for a *suspended attorney* to do so, given that such an attorney is subject to greater strictures than a layperson with regards to conduct that may constitute the practice of law.") (cleaned up); *In re Creasy*, 12 P.3d 214, 217-18 (Ariz. 2000) ("[A] person need not appear in a judicial proceeding to engage in the practice of law. . . .  Creasy clearly employed legal skill . . . and cannot now claim he was not engaged in practicing law. . . .  [S]ome actions which may be taken with impunity by persons who have never been admitted to the practice of law, will be found to be in contempt if undertaken by a suspended or disbarred attorney.").

Accordingly,

**IT IS ORDERED** that Michael W. Caspino is **suspended** from practicing law in the District of Arizona for a period of one year, beginning on the date of this order.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction over Mr. Caspino to enforce this order.

**IT IS FURTHER ORDERED** that pursuant to LRCiv 83.2(d), Mr. Caspino shall file, within seven days of the date of this order, a notice certifying that each Plaintiff has been notified in writing that Mr. Caspino is suspended for one year in the District of Arizona and will not provide them with legal services for this case or any other case in the District of Arizona during the one-year period.

…

…

…

- 23 -

1    **IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of this

2    order to the following addresses:

3       1. State Bar of Nevada Office of Bar Counsel, 3100 W. Charleston Blvd., Suite 100,

4          Las Vegas, NV 89102

5       2. Ralph L. Carr Judicial Center, Colorado Supreme Court, Office of Attorney

6          Regulation, 1300 Broadway, Suite 500, Denver, CO 80203

7       3. Hon. Linda Carpenter, Court of Common Pleas of Philadelphia County, 299B City

8          Hall, Philadelphia, PA 19107

9       4. Hon. Valerie E. Caproni, Southern District of New York, Daniel Patrick Moynihan

10         United States Courthouse, 500 Pearl Street, Room 240, New York, NY 10007-1312

11      5. State Bar of Arizona, 4201 N 24th St #100, Phoenix, AZ 85016

12      6. State Bar of California, Office of Attorney Discipline, 180 Howard St., San

13         Francisco, CA 94105

14         Dated this 2nd day of June, 2025.

Dominic W. Lanza
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Appendix A</u>

**PRICE CASPINO LLP**                                            *Attorneys for Plaintiffs*
Cathleen Kelly Rebar, Esquire
I.D. 82872
470 Norristown Road, Suite 201
Blue Bell, PA 19422
484-344-5340
crebar@pricecaspino.com

| | |
|---|---|
| CALVIN DICKEY, SR. AND NICOLE DICKEY, individually and as independent administrators of the Estate of Calvin, Jr., Deceased, <br><br>        Plaintiffs, <br>     v. <br><br> BUCKNELL UNIVERSITY; JOHN BRAVMAN; JERMAINE TRUAX; TIM PAVELECHKO; IAN WOOD; DAVID CECCHINI; MARK KULBIS; and DOES 1-25, <br>        Defendants. | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY <br><br> APRIL TERM, 2025 <br><br> CIVIL ACTION NO. 250400159 |

## <u>VERIFIED STATEMENT OF MICHAEL W. CASPINO</u>

I, Michael W. Caspino, Esquire, am a candidate for *pro hac vice* admission to the bar of the Commonwealth of Pennsylvania in the above-referenced matter.

I am currently licensed to practice law in the State of California (No. 171906).

I have not been suspended, disbarred, or otherwise disciplined in any jurisdiction.

I am not subject to any disciplinary proceedings in any jurisdiction.

I have not previously applied for *pro hac vice* admission to any court in the Commonwealth of Pennsylvania.

I agree to comply with and be bound by the applicable statutes, case law and procedural rules of the Commonwealth of Pennsylvania, including the Pennsylvania Rules of Professional Conduct.

I agree to submit to the jurisdiction of the Pennsylvania courts and the Pennsylvania Disciplinary Board with respect to acts and omissions occurring during the appearance in the matter for which admission *pro hac vice* is being sought.

I consent to the appointment of the sponsor as the agent upon whom service of process shall be made for all activities, including disciplinary actions, that may arise out of the practice of law in the matter for which admission *pro hac vice* is sought.

BY: _____

Michael W. Caspino (CA State Bar No.: 171906)
PRICE CASPINO LLP
30442 Esperanza
Rancho Santa Margarita, CA 92688
(949) 899-9188
mcaspino@pricecaspino.com;

Date: April 2, 2025