**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terence William McDonough, et al., | No. CV-24-00764-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Michael J Bidwill, et al., | |
| Defendants. | |

    Terence McDonough ("McDonough") once worked as the vice president of player personnel for the NFL's Arizona Cardinals (hereinafter, "the Club"). In 2023, McDonough filed an arbitration petition in which he asserted claims for breach of contract and retaliation against the Club and its owner, Michael J. Bidwill ("Bidwill"). In response, a public relations firm retained by the Club's law firm issued a statement that characterized McDonough's claims as "wildly false, reckless, and an opportunistic ploy for financial gain" and also included various references to McDonough's personal life, including allusions to "disturbing allegations of extreme domestic violence by Terry" and to a report from "a close family member . . . that Terry had 'abandoned responsibility' to one of his children and cut her off financially." Following the release of this statement, McDonough amended his arbitration petition to add claims for defamation and invasion of privacy.

    In March 2024, the arbitration concluded. Although McDonough did not prevail on any of the claims he asserted in his original arbitration petition, he prevailed on his later-added defamation claim, obtaining an overall award of $3 million.

These developments provide the backdrop for this action, which was filed in April 2024. (Doc. 1-3.) The three plaintiffs are McDonough, his wife Lynette McDonough ("Lynette"), and his daughter Caroline McDonough ("Caroline"). The six defendants are the Club, Bidwill, and the four entities or individuals who were allegedly responsible for formulating the challenged statement (hereinafter, "the Counterpoint Statement"): Counterpoint Strategies, LTD ("Counterpoint"), James McCarthy ("McCarthy"), Donald Peder Johnsen ("Johnsen"), and Gallagher & Kennedy ("G&K"). For ease of reference, the Court will refer to Lynette and Caroline as "the Family Plaintiffs," to the Club and Bidwill as "the Club Defendants," and to Counterpoint, McCarthy, Johnsen, and G&K as "the Public Relations Defendants."

In July 2024, Plaintiffs filed the First Amended Complaint ("FAC"). (Doc. 51.) In the FAC, McDonough asserted claims for defamation, negligence, and intentional infliction of emotional distress ("IIED") against the Public Relations Defendants, while the Family Plaintiffs asserted the same claims against all Defendants. (*Id.*) Defendants, in turn, moved to compel arbitration as to McDonough and to dismiss the Family Plaintiffs' claims for failure to state a claim. (Docs. 58, 70.)

On February 13, 2025, the Court issued an order (hereinafter, "the February 13 Order") granting both motions. (Doc. 79.) McDonough's claims have since been stayed pending arbitration. (Doc. 82.) As for the Family Plaintiffs, the Court authorized them to file an amended pleading in an attempt to cure the deficiencies identified in the dismissal order. (*Id.* at 35-36.) The Family Plaintiffs took advantage of that opportunity and filed a new pleading, the Second Amended Complaint ("SAC"). (Doc. 80.)

In response, Defendants filed the pending motion to dismiss. (Doc. 83.) That motion is now fully briefed. (Docs. 88, 93.)[1] For the reasons that follow, the motion is granted.

…

---

[1] The parties' requests for oral argument are denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

- 2 -

# BACKGROUND

## I. Factual Allegations

The following facts, presumed true, are derived from the SAC, as well as certain other documents incorporated by reference in the SAC. (Doc. 80; Doc. 1-3.)

### A. **The Parties**

McDonough worked for the Club from 2013 to 2024, last serving as the vice president of player personnel. (Doc. 80 ¶¶ 1, 19.) Lynette is McDonough's wife. (*Id.* ¶ 2.) Caroline is McDonough's daughter. (*Id.* ¶ 77.) Caroline has special needs. (*Id.* ¶ 88.) McDonough and Lynette currently reside in Louisiana and Caroline currently resides in North Carolina. (*Id.* ¶¶ 1-3.)

Bidwill is the principal owner, chairman, and president of the Arizona Cardinals Football Club LLC, which has already been defined above as "the Club." (*Id.* ¶ 4.)

Counterpoint is a business that performs communications consulting work. (*Id.* ¶¶ 6, 60-61.) McCarthy is the president and CEO of Counterpoint. (*Id.* ¶ 7.)

Johnsen is an Arizona-based attorney. (*Id.* ¶ 8.)[2] G&K is an Arizona-based law firm. (*Id.* ¶ 9.)

### B. **Underlying Factual Allegations**

"On April 4, 2023, [McDonough] filed a confidential arbitration petition before NFL Commissioner Roger Goodell. Therein, McDonough pursued claims for retaliation, breach of contract, etc." (*Id.* ¶ 58.)

In the days preceding McDonough's arbitration filing, Bidwill and the Club, as well as Johnsen and G&K, "retained McCarthy and Counterpoint Strategies to defame and humiliate each of the Plaintiffs." (*Id.* ¶ 59.) On an unspecified date after the arbitration filing, Defendants, led by McCarthy, published the Counterpoint Statement, which purported "to provide a public response along with broader context for some disappointing and irresponsible actions by [McDonough]." (*Id.* ¶ 68). The Counterpoint Statement

---

[2] Although the pleadings are ambiguous on this point, Defendants previously submitted undisputed evidence that Johnsen was employed by G&K. (Doc. 70-1 at 2 ¶ 6.)

characterized McDonough's arbitration claims as "wildly false, reckless, and an opportunistic ploy for financial gain." (*Id.*) It also described McDonough as having a "volatile demeanor toward colleagues" and included allusions to "disturbing allegations of extreme domestic violence by Terry" and to "a spontaneous overture from a close family member of [McDonough's] . . . that Terry had 'abandoned responsibility' to one of his children and cut her off financially." (*Id.*) The SAC alleges that Defendants knew these statements to be untrue at the time of publication. (*Id.* ¶ 71.)

Following the release of the Counterpoint Statement, McDonough amended his arbitration petition to include claims for defamation and invasion of privacy. (*Id.* ¶ 80.)

On March 29, 2024, the arbitrator issued a final award, finding that McDonough had shown by clear and convincing evidence that the Club Defendants had defamed him by accusing him of abandoning his daughter and cutting her off financially and by accusing him of "extreme domestic violence." (*Id.* ¶¶ 86-93.)

II. <u>Relevant Procedural History</u>

On April 3, 2024, Plaintiffs filed a complaint in Maricopa County Superior Court. (Doc. 1-3.)

On April 4, 2024, Johnsen and G&K removed the action to federal court. (Doc. 1.)

On July 8, 2024, Plaintiffs filed the FAC. (Doc. 51.)

On July 22, 2024, Defendants filed a motion to dismiss as to the Family Plaintiffs (Doc. 58), a motion to compel arbitration as to McDonough (Doc. 59), and a motion to seal the motion to compel arbitration (Doc. 60).

On August 14, 2024, the Court denied Defendants' motion to seal. (Doc. 68.) Defendants then filed an unredacted version of the motion to compel arbitration. (Doc. 70.)

On February 13, 2025, the Court issued the February 13 Order, which granted the motion to compel arbitration as to McDonough and dismissed the Family Plaintiffs' claims with leave to amend. (Doc. 79.)

On February 27, 2025, Plaintiffs filed the SAC. (Doc. 80.) The SAC contains no

new factual allegations and simply adds a new claim for the tort of false light. (*Id.* ¶¶ 98-103.) On the same day, the parties filed a joint notice requesting that the Court stay McDonough's claims during the pendency of arbitration. (Doc. 81.)

On March 4, 2025, the Court granted the stay request. (Doc. 82.)

On March 20, 2025, Defendants filed the pending motion to dismiss. (Doc. 83.)

On April 14, 2025, the Family Plaintiffs filed a response. (Doc. 88.)

On May 2, 2025, Defendants filed a reply. (Doc. 93.)

**DISCUSSION**

I. The February 13 Order

As noted, in the FAC, the Family Plaintiffs asserted claims for defamation, negligence, and IIED.

In the February 13 Order, the Court concluded that the Family Plaintiffs' defamation claims failed to state a claim because the Counterpoint Statement portrayed Lynette and Caroline as victims of McDonough's alleged conduct and thus was not defamatory as applied to Lynette and Caroline. (Doc. 79 at 26-30.) The order cited decisions from "[c]ourts across the country" holding that "identifying a person as the victim of a violent crime is not defamatory." (*Id.* at 27-28.) The order also recognized the possibility that Lynette might be able to state a defamation claim "if the Counterpoint Statement specifically stated that [she] had chosen to tolerate or excuse the domestic violence," but it clarified that, as alleged in the FAC, "the Counterpoint Statement says no such thing" and "[t]he Family Plaintiffs cannot avoid dismissal by attacking a hypothetical statement Defendants did not actually make." (*Id.* at 28-29.)

Next, the Court concluded that the Family Plaintiffs' negligence claims failed to state a claim because (1) "[t]he FAC does not allege a special relationship or a public policy basis for [the] alleged duty"; and (2) "many states follow the rule that a plaintiff cannot maintain a negligence claim based solely on a duty not to defame." (*Id.* at 32-33, cleaned up.)

Next, the Court concluded that the Family Plaintiffs' IIED claims failed to state a

1  claim because (1) the Counterpoint Statement did not, at least as applied to the Family
2  Plaintiffs, qualify as the sort of "extreme and outrageous" conduct necessary to support an
3  IIED claim; and (2) Plaintiffs failed to respond to Defendants' arguments regarding the
4  insufficiency of the FAC's allegations of "severe" emotional distress. (*Id.* at 33-35.)

Last, the Court addressed the question of leave to amend. (*Id.* at 35-36.) Although the Family Plaintiffs had not requested leave to amend in the event of dismissal, the Court *sua sponte* granted it, albeit while expressing "skeptic[ism] that the Family Plaintiffs will be able to plead new facts that will remedy the deficiencies identified above." (*Id.* at 35.) The Court also specified that "the changes shall be limited to attempting to cure the deficiencies raised in this order." (*Id.* at 36.)

II. <u>Exceeding The Scope Of The Grant Of Leave To Amend</u>

    A. **The Parties' Arguments**

Defendants argue that the Family Plaintiffs' assertion of a new cause of action in the SAC (*i.e.*, the new "False Light" claim asserted in paragraphs 98-103) exceeds the limited scope of leave to amend granted in the February 13 Order. (Doc. 83 at 3-5.) More specifically, Defendants argue that the February 13 Order authorized leave to amend only "to plead new facts that will remedy the deficiencies identified" in the February 13 Order, which deficiencies relate only to "the claims already alleged." (*Id.* at 3.) Defendants also argue that "the Court was correct in limiting the leave it granted" because the Family Plaintiffs had six prior opportunities to plead a false light claim but failed to do so. (*Id.* at 3-5.)

In response, the Family Plaintiffs argue that the February 13 Order placed no limit on their ability to add a new cause of action because "[o]ne cannot reasonably read [the relevant statement] as an injunction that Plaintiffs do no more than plead additional facts, and that they had no right to articulate a different legal theory based on the facts already pleaded." (Doc. 88 at 17.) The Family Plaintiffs further contend that the SAC represents a "genuine effort to address the deficiencies identified in the" February 13 Order and "seeks to ensure all relevant legal claims are pleaded in this proceeding" and that Rule 15(a)'s

policy of "extreme liberality" supports their approach. (*Id.*)

In reply, Defendants reiterate many of their earlier arguments and add that they will be prejudiced if the Court allows the Family Plaintiffs to add this new claim because "Defendants have gone to the significant time and expense of preparing three rounds of motion to dismiss briefings, joining multiple meet-and-confers, and preparing for full oral argument." (Doc. 93 at 2 n.2.)

B.     **Analysis**

The Family Plaintiffs' attempt to add a new cause of action in the SAC, which is based on the same facts that were alleged in the FAC, exceeds the limited grant of leave to amend that was *sua sponte* authorized in the February 13 Order. In the original complaint and again in the FAC, the Family Plaintiffs asserted only defamation, negligence, and IIED claims. (Doc. 1-3; Doc. 51.) In the February 13 Order, the Court identified various deficiencies in each of those claims and dismissed them all. (Doc. 79.) Some of those deficiencies were factual rather than legal in nature—as discussed in Part II above, the Court noted (1) the absence of any factual allegations in the FAC as to whether Lynette had been accused of engaging in volitional conduct (*i.e.*, "had chosen to tolerate or excuse the domestic violence"), the addition of which might at least theoretically support a defamation claim; and (2) the Family Plaintiffs' failure to respond to Defendants' challenge to the adequacy of the FAC's allegations concerning the severity of their emotional distress, as required to support an IIED claim. The Court explained that although it was "skeptical that the Family Plaintiffs will be able to plead new facts that will remedy the deficiencies identified above, and although the Family Plaintiffs already amended their complaint once before, Rule 15(a)'s policy of 'extreme liberality' counsels in favor of giving the Family Plaintiffs one last chance to amend." (*Id.* at 35.) The final portion of the February 13 Order reiterated that "the changes shall be limited to attempting to cure the deficiencies raised in this order." (*Id.* at 36.)

The SAC disregards this limitation. It adds no new facts and simply adds a new cause of action, based on the old facts, premised on a new legal theory. But the February

13 Order did not authorize the Family Plaintiffs to plead a new claim—it only authorized them to plead new facts to remedy the deficiencies identified in the February 13 Order regarding their existing defamation, negligence, and IIED claims.

Courts routinely dismiss or strike newly added claims where the addition of such claims exceeds the scope of leave to amend that was previously authorized. *See, e.g., Strifling v. Twitter Inc.*, 2024 WL 54976, *1 (N.D. Cal. 2024) ("The amended complaint plainly exceeds the scope of this Court's dismissal order, which reads, '[plaintiffs] may file an amended complaint within twenty-one days of this order *solely* to cure the deficiencies identified by this order.' This language permits neither the addition of new parties nor the addition of new claims but rather permits [plaintiffs] to amend their allegations in a manner sufficient to state the pleaded claims.") (citations omitted); *Crane v. Yarborough*, 2012 WL 1067965, *13 n.14 (C.D. Cal. 2012) ("[I]t would be appropriate to strike plaintiff's First Amendment retaliation claim because the addition of such claim which has been raised for the first time in the Second Amended Complaint exceeds the scope of the leave to amend granted in the November 30 Order . . . ."); *PB Farradyne, Inc. v. Peterson*, 2006 WL 2578273, *3 (N.D. Cal. 2006) (striking new theory of liability alleged in the third amended complaint because it was "outside the scope of the leave to amend granted" when the court dismissed the second amended complaint). Put simply, "[i]n cases like this one, . . . where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, *3 (N.D. Cal. 2010).

In an apparent attempt to avoid application of this rule, the Family Plaintiffs suggest that the February 13 Order identified the absence of a false light claim as a deficiency in the FAC. (Doc. 88 at 2, 11.) The order did no such thing. The order's only mention of the tort of false light occurred in a citation to *Banerjee v. Continental Inc*., Inc., 2016 WL 5939748 (D. Nev. 2016), which included a parenthetical containing the following quotation from that case: "[S]ituations such as being falsely portrayed as a victim of a crime . . . or being portrayed as destitute, may place a person in a harmful false light without rising to

- 8 -

the level of defamation." (Doc. 79 at 28.) The Court did not cite *Banerjee* to announce a "deficiency" in the way the Family Plaintiffs pleaded their claims or to suggest the viability of this cause of action—it merely included this citation to emphasize the standard for defamation and to illustrate why the facts as alleged in the FAC were insufficient to meet that standard.

Nor is there any merit to the Family Plaintiffs' contention that Rule 15 requires them to be given an opportunity to assert new legal theories at this stage of the litigation. This is, in effect, a request for reconsideration of the limited grant of leave to amend set forth in the February 13 Order, which only authorized the Family Plaintiffs to allege new facts in an attempt to cure the deficiencies that led to the dismissal of the claims they asserted in the FAC. Putting aside that the Family Plaintiffs have not followed the proper procedure for seeking reconsideration of the February 13 Order, *see* LRCiv 7.2(g), reconsideration is not warranted on the merits. As noted, the Family Plaintiffs did not even request leave to amend in response to the motion to dismiss the FAC. Nevertheless, the Court granted it to them *sua sponte*. The scope of that *sua sponte* leave to amend was the traditional scope that courts routinely grant—again, leave to allege new facts in an attempt to cure the deficiencies that led to the dismissal of the existing claims. This was not "manifest error." *See* LRCiv 7.2(g)(1). *See also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (noting that "reconsideration" is "an extraordinary remedy" that is available only in "highly unusual circumstances," such as when the district court "committed clear legal error") (cleaned up); *Julianello v. K-V Pharmaceutical Co.*, 791 F.3d 915, 922-23 (8th Cir. 2015) (concluding that the district court "did not abuse its discretion in denying the motion for reconsideration of the scope of leave to amend the complaint," where the movants argued that the scope should have been more expansive, because the movants did not raise this argument at the time of the challenged decision and the movants were thus "seeking to use a motion for reconsideration for the impermissible purpose of raising evidence they could have previously raised").

In a related vein, to the extent the SAC or the Family Plaintiffs' latest response brief

was intended to function as a request under Rule 15 for leave to assert a new legal theory, that amendment request is denied. At the time those documents were filed, this case was nearly a year old (in the case of the SAC) or more than a year old (in the case of the response brief) and the Family Plaintiffs had already amended their complaint once before. Additionally, Defendants had already expended significant resources pursuing their earlier motion to dismiss. Finally, and most important, this is not a situation where some external obstacle prevented the Family Plaintiffs from developing a false light claim or asserting it during earlier stages of the case. "A district court does not abuse its discretion in denying leave to amend where the movant has presented no new facts but only new theories and has provided no satisfactory explanation for his failure to develop the new contentions originally." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993). This "discretion is particularly broad where," as here, "the plaintiff has bypassed other opportunities to amend." *Id. See also Kittel v. Advantage Physical Therapy*, 843 F. App'x 53, 56 (9th Cir. 2021) ("[T]he district court did not abuse its discretion in denying Kittel a third opportunity to amend her complaint. The court appropriately held that Kittel had failed to articulate why the proposed amendments could not have been incorporated into prior iterations of her complaint, given the additional allegations were not premised on newly discovered facts but rather new theories that could have been asserted earlier. The district court also reasonably concluded that giving Kittel a third chance to amend would have been unduly prejudicial to Defendants. Kittel objects to the timing of the court's denial but fails to point to any rule prohibiting the district court from denying leave to amend prior to issuing a scheduling order.") (citation omitted); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[E]ven if we believed Allen's new arguments might not be futile, we would not reverse the district court. We have held that a district court does not abuse its discretion in denying a motion to amend a complaint when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally. This is precisely such a case. We therefore conclude that the district court did not abuse its discretion in

- 10 -

denying Allen leave to amend.") (cleaned up); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982) (no abuse of discretion in denying request to file amended complaint, where the request was submitted after the district court granted the defendants' motions to dismiss and the plaintiff "provided no satisfactory explanation for [its] failure to fully develop his contentions originally, and the amended complaint was brought only to assert new theories, if anything, and was not premised upon new facts"). *See generally Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Given these conclusions, it is unnecessary to address Defendants' alternative arguments for dismissing the new false light claim.

Accordingly,

**IT IS ORDERED** that:

1. Defendants' motion to dismiss (Doc. 83) is **granted**.

2. The Family Plaintiffs' claims in the SAC are dismissed without leave to amend.

Dated this 21st day of August, 2025.

Dominic W. Lanza
United States District Judge

- 11 -